### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | **Case No.  25-CR-289-SEH** |
| v. | ) | |
| | ) | |
| THOMAS JOSHUA KEIZER, | ) | |
| Defendant. | | |

### <u>THOMAS JOSHUA KEIZER'S SENTENCING MEMORANDUM</u>

On May 28, 2026, Thomas Joshua Keizer filed a Motion for Nonguideline Sentence—Downward Variance (Doc. 42) requesting a sentence of 180 months on each count running concurrently. In consideration of the §3553(a) factors, Mr. Keizer submits the following sentencing memorandum to guide the Court in its determination.

### Sentencing Authority

A district court's discretion is no longer limited by the guidelines since its matrix is now merely advisory. *United States v. Booker,* 543 U.S. 220, 245-67 (2005). A court is unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007) (quoting *Koon v. United States,* 518 U.S. 81 (1996)). Thus, courts must impose a punishment that "fit[s] the offender and not merely the crime." *Pepper v. United States 476 U.S.* at 487–88 (2011)(citation omitted). As this individualized assessment, the Sentencing Reform Act specifically

provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Consistent with this principle, § 3553(a) requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of a specific case through the lens of seven factors as discussed below. *See* 18 U.S.C. § 3553(a)(1)-(7). Nevertheless, "[s]entencing courts have long enjoyed discretion in the sort of information they may consider when setting an appropriate sentence. This durable tradition remains, even as federal laws have required sentencing courts to evaluate certain factors when exercising their discretion." *Dean v. United States*, 581 U.S. 62, 137 S.Ct. 1170, 1175 (2017)(citing *Pepper*, 562 U.S. at 487–89)).

Courts must impose sentences that are "'sufficient, but not greater than necessary, to comply with' the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." *Id.*, 581 U.S. at, 67 (2017). Section 3553(a) requires sentencing courts to consider seven factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." When imposing a sentence, the district court must "engage in a holistic inquiry of the § 3553(a) factors" while respecting the unique circumstances of each individual defendant. *United States v. Lente*, 759 F.3d 1149, 1174 (10th Cir.

2

2014) (citation modified); *see, e.g., Gall v. United States*, 552 U.S. 38, 52, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).

> ***History and Characteristics of Mr. Keizer, Need for Correctional Treatment in the Most Effective Manner.***

Thomas Joshua Keizer suffered a difficult and traumatic upbringing. Mr. Keizer was born in Pirmasens, Germany. His father was stationed in Germany while serving in the United States military. Mr. Keizer described his father as running the house like a "military camp." His father's strict authoritarian approach to discipline negatively impacted both Mr. Keizer, as well as his mother and sister. Mr. Keizer often witnessed his father angrily yelling at his mother. His father also angrily berated Mr. Keizer. This emotional abuse continued throughout the duration of his parents' marriage.

As the child of a military parent, Mr. Keizer moved a lot. Constant relocation prevented Mr. Keizer from forming and maintaining normal relationships with his peers. Over the course of Mr. Keizer's childhood, he lived in Germany, Hawaii, California, Oregon, Oklahoma, and Georgia. Studies have shown that children of all ages experience more emotional and behavioral problems when their parents are deployed.[1] Findings consistently show that children of military service members face increased risks of depression, anxiety, and behavioral challenges.[2]

---

[1] https://asymca.org/blog/effects-of-military-life-on-child-development/
[2]  Leskin GA, Nemcek SP, Basha SAJ, Gewirtz A. Global Perspectives on the Mental Health of Children of Military Service Members. Psychiatry. 2025 Fall;88(3):273-287. doi: 10.1080/00332747.2025.2530804. Epub 2025 Sep 12. PMID: 40939067.

However, protective factors such as strong family cohesion, supportive parental mental health, and access to structured services can buffer these risks.[3] In Mr. Keizer's case, the negative factors of his father's deployment were not mitigated by strong family cohesion and parental support, but were further compounded by his father's emotional abuse.

His mother, often the target of his father's aggression, suffered with drug addiction and mental illness. Mr. Keizer watched his father back his mother into the wall and scream in her face. Mr. Keizer described his mother as a "pushover." She would regularly be reprimanded by his father for speaking up for him and his sister. His parents divorced when Mr. Keizer was 8 years old. His mother eventually fell further into drug addiction and "disappeared" for period of Mr. Keizer's childhood. (PSR, ¶ 54).

Mr. Keizer continued to live with his father after his parents divorced. His father remarried and for a moment Mr. Keizer enjoyed a relatively normal relationship with his father. His stepmother, however, began to emotionally abuse Mr. Keizer by insulting him. And Mr. Keizer's father soon resumed his pattern of aggression toward Mr. Keizer.

The toll of emotional abuse and constant relocation harshly impacted Mr. Keizer's ability to make friends and carry normal relationships. Mr. Keizer became withdrawn and isolated himself. He found it easier to form relationships with people online. In isolation he spent much of his time in online forums and

---

[3] Id.

chatrooms. Mr. Keizer states that he finds it easier to communicate with people online than he can face-to-face.

It is apparent that his father's military deployment had a negative impact on Mr. Keizer. The negative impact is evinced by his difficulties in forming and maintaining relationships with people. Unfortunately, the family support that could have mitigated this was not present. Instead, Mr. Keizer was emotionally abused by one parent and abandoned by the other. It is no wonder that Mr. Keizer suffers with anxiety. (PSR, ¶ 56). He likely also suffers from depression and PTSD.

Given the early history of abuse, strict authoritarian upbringing, and pattern of relocation, an individualized assessment of Mr. Keizer dictates that he is outside the heartland of similarly situated defendants. The trauma that Mr. Keizer suffered warrants a significant variance. It is not difficult to see how his history of abuse led to his withdrawal and isolation, which predicated the offense conduct. Besides weekly meetings with an elementary school counselor, Mr. Keizer has never received any meaningful mental health treatment. (PSR, ¶ 56).  Mr. Keizer would undoubtedly benefit from counseling or other therapeutic treatment.

Mr. Keizer's history and characteristics, on their own, warrant a reduction to 180 months. Mr. Keizer's upbringing was traumatic and likely stunted him emotionally. He has reported being unable to form normal relationships because the relationships he has had throughout his life have not been healthy. Mr. Keizer has no criminal history. He's a good candidate for treatment. A sentence that is "sufficient, but not greater than necessary," should enable Mr. Keizer to receive

treatment and reintegrate into society. A sentence of 180 months appropriately contemplates Mr. Keizer's history and characteristics, while recognizing his need for rehabilitative treatment in the most effective manner.

### *Acceptance of Responsibility*.

On January 15 and 16, 2026, Thomas Joshua Keizer waived his right to indictment, trial, and appeal, and accepted responsibility for four felony counts charged by Information. (Docs. 29, 30). In addition to waving his rights, Mr. Keizer also stipulated to several guideline enhancements, which increased his advisory guideline range. (Doc 35, ¶15). His acceptance of responsibility virtually lifted all burden from the Government in proving its case, spared child victims from further trauma of litigation, and guaranteed that he would serve, at a minimum, a lengthy prison sentence. In exchange for his acceptance of responsibility, the Government agreed to dismiss the single count in the Indictment. (Doc. 35).

Under the United States Sentencing Guidelines, Acceptance of Responsibility is an adjustment that reduces a sentence up to three levels if a defendant timely and clearly accepts responsibility of his offense. USSG §3E1.1. Commentary notes in USSG §3E1.1 recognize the "legitimate societal interest" in a defendant pleading guilty and ensuring "the certainty of his just punishment in a timely manner." *Id.* (*See Background*, commentary). Here, Mr. Keizer has clearly demonstrated responsibility, and the Government has filed a motion requesting that he receive a three-level reduction. (Doc. 40).

But three-level reduction does not adequately reflect the significance of Mr. Keizer's acceptance. In this case, Mr. Keizer not only pled guilty, he also waived his right to indictment on the charges in the Information. Mr. Keizer's acceptance of responsibility was not just timely, it was early. Mr. Keizer's waiver of indictment in anticipation of his plea of guilty plea saved the government time and resources needed to submit the case to grand jury. Further, Mr. Keizer accepted responsibility for four separate counts and filed no pre-trial motions. The early and forthcoming nature of his acceptance of responsibility separates his case from the mine run of similar cases.

### *The Nature and Circumstances of the Offense.*

The offense conduct in this case involves Mr. Keizer producing, receiving, and possessing child pornography. The two most serious counts involve Mr. Keizer surreptitiously recording two minors using the bathroom. Mr. Keizer was able to capture videos of the minors by hiding a camera in a laundry basket in the bathroom of his residence. The minors were his niece, who also lived at the residence with her parents, and her friend. Both minors were approximately 6 to 10 years old at the time of the offense conduct.

While the offense conduct is serious and warrants a term of incarceration, the offense does not involve any sexual acts or abusive sexual contact perpetrated onto the victims. The victims were unknowingly recorded but there is no evidence either suffered any abuse beyond the invasion of privacy. Further, there is no evidence that the videos were distributed to others. The heartland of these types of

cases often involves sexual acts, and many times involve distribution to others. This case does not involve any such facts. A reduction should be granted to reflect that the offense conduct was less severe than the heartland of similar offenses.

### *Factors Identified by the Probation Office*

Paragraph 76 of the PSR acknowledges that "the predominant, if not sole method, of transportation in the 21st century "of child pornography is "by computer." (PSR, ¶ 76). The PSR recognizes similar cases where application of the two-level enhancement under USSG 2G2.2(b)(6) "may overstate the seriousness of the offense and may be duplicative of the base offense level." Application of USSG § 2G2.2(b)(6) was not an enhancement that Mr. Keizer stipulated to in his plea agreement. Therefore, Mr. Keizer further requests that the Court consider the probation office's identified factor in fashioning a below-guideline sentence.

### CONCLUSION

In making an individualized assessment of Mr. Keizer, the offense conduct, and his acceptance of responsibility, this Court should grant a downward variance sufficient to sentence Mr. Keizer to 180 months on each count and run each count concurrently. Mr. Keizer requests that this Court grant his request and sentence him accordingly.

Respectfully submitted this 4th day of June, 2026.

OFFICE OF THE FEDERAL PUBLIC DEFENDER
Julie L. O'Connell, Federal Public Defender

8

By: /s/*Jason D. Lollman*
Jason D. Lollman, OBA No. #32052
Assistant Federal Public Defender
One West Third Street, Suite 1225
Tulsa, Oklahoma 74103-3532
(918) 581-6916

*Counsel for Thomas Joshua Keizer*

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of June, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrant(s):

Valeria Luster, Assistant United States Attorney


 /s/*Jason D. Lollman*
Jason D. Lollman
Assistant Federal Public Defender